Mr. Justice Clayton
delivered the opinion of the court.
This was a bill filed in the circuit court of Hinds county by the appellants, having various objects in view. It first prays to enjoin the sale under execution of Jennings & Drone of several slaves seized as the property of Elias Tickers. Next it prays that the complainants may be subrogated to the rights of the deféndants, Slater and Hartzogg, to whom the same slaves were conveyed by deed of mortgage by Elias Tickers, to secure them against certain liabilities as sureties, and as the bill alleges, against liability as sureties in an injunction bond for the debt which they are seeking to enforce, and lastly for the foreclosure of the mortgage, for their benefit.
There was a demurrer filed at one time, to the jurisdiction of the court, which appears to have been afterwards withdrawn. If, however, the court had not by the constitution jurisdiction of the subject-matter, neither the withdrawal of the demurrer, nor the express consent of the parties could confer it. That instrument gives the jurisdiction to the circuit courts, on the equity side, to foreclose mortgages, but in no other equity causes where more than five hundred dollars are in controversy. When the foreclosure of the mortgage is the chief object of the bill, it might draw to it certain incidental inquiries auxiliary to the exercise of the power. But here is a controversy between judgment creditors, and those who claim under the mortgage. The right of priority between them is first to be settled. Next the right of subrogation, which is denied, and after all this comes the question of foreclosure of the mortgage. To say the least, this is carrying the jurisdiction to a very questionable extent: but we reserve any authoritative opinion, until another occasion.
The bill was dismissed in the court below, and we think correctly. The doctrine of subrogation rests on very obvious principles of equity, and as applicable to the case before us, is thus stated by a writer of great accuracy: “If either the creditor, or the surety at the time he becomes bound, or at any time before or after, takes a lien on real or personal property, the other party is entitled to the benefit of it; so that if the surety *93 fail, the creditor may enforce the lien the surety may have taken. In short, either is entitled to stand in the shoes of the other, in regard to all remedies.” 2 Tucker, Comm. 492. It will thus be seen, that whilst the creditor has the right to be substituted to the place of the surety, this substitution or subro-gation can give him no higher right. The right of the surety must be tried by the instrument which creates it. Before we proceed to consider the mortgage, it will be well to state, that Vickers, the mortgagor, never joined in the injunction bond, on which this bill is founded. The mortgage was given to guard against several liabilities. The condition is as follows: “Now if the said Vickers shall well and truly satisfy and discharge said bonds above recited, in case by the law he shall be required to pay them, and if he shall at all events save entirely harmless and free from all costs and damages and loss, on account of said above recited bonds, the said Hartzogg and Slater, then this obligation to be utterly void.” The bonds referred to were several bonds for writs of supersedeas, and the injunction bond, the origin of this controversy.
It is very manifest, that the right of Hartzogg and Slater to enforce the mortgage, depends on a breach of the condition, and the fact that Vickers should be required by law to pay the bond. So far from been required by law to pay it, he never executed it, and is no party to it. It would seem to have been the intention that he should execute it, but in point of fact he never did, and this court cannot impose a burthen on him, which he did not undertake. It is impossible, therefore, so far as-any thing has been made to appear to us, that he should ever be required by law to pay it.
In regard to the other portion of the condition, to save them harmless from all costs, damages, and loss, on account of said bonds, the same remark is in all its force applicable. Moreover, in any possible event, the extent of the “cost, damages, and loss,” would have to be ascertained by suit on the bond, unless the sureties find the decree on dissolution of the injunction. This they did not do. The bill states that an action had been brought at law, on the injunction bond, which was then stilll *94 pending; and the answer of Hartzogg states, that as to him the action had been dismissed, upon his craving oyer of its condition. On this aspect of the case, this bill was premature, except for the mere purpose of prohibiting the sale of the negroes by Jennings & Drone during the litigation, because it was not ascertained in the only legal mode — a suit on the bond — what was the extent of loss or damage sustained by Hortzogg and Slater, and the consequent extent of their right to indemnity. That right must limit the right of the complainants.
The first ground, however, is entirely conclusive of the rights of the parties. As no recovery could be had against Tickers on the bond, because he was no party to it, the mortgage as to that liability gave no right of indemnity to the sureties. The complainants can occupy no higher ground than the sureties. The mortgage was not a security for the debt, or for the original note the evidence of the debt. To give it that extent, would go beyond the intention and the undertaking of the mortgagor.
The decree dismissing the bill is affirmed.